IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

UNITED STATES OF AMERICA,

       **Plaintiff,**

      **vs.**                                 **Criminal Action No. 3:16-CR-26**

**JONATHAN LEIGH WIENKE,**

      **Defendant.**

## DEFENDANT'S MOTION TO SUPPRESS

Comes now the Defendant, Jonathan Leigh Wienke, by and through counsel, Nicholas J. Compton, Assistant Federal Public Defender, and pursuant to the Fourth Amendment, moves to suppress all physical evidence in this case because he suffered from the unconstitutional search of his residence in Martinsburg, West Virginia, on June 9, 2016 (3:16mj42), and subsequent illegal searches of his residence, storage shed, storage building, and blue Chevrolet Silverado, on June 13, 2016 (3:16mj43, 44, and 45).

## BACKGROUND

Mr. Wienke is an employee of the Department of Homeland Security (DHS) whose place of duty was the DHS facility on Nebraska Avenue in Washington, D.C. The Nebraska Avenue facility is a secure facility that requires employees to be screened prior to entering the facility. As part of their enhanced security measures, DHS also randomly picks individuals from the screening queue for additional screening. On June 9, 2016, Mr. Wienke was randomly selected for additional screening.

During the additional screening, Mr. Wienke was patted down and the backpack he was carrying was searched. Mr. Wienke was allegedly found to have a small pocket knife on his

1

person.  His backpack allegedly contained pepper spray, a pair of handcuffs, a small portable keychain breathalyzer, walkie-talkies, spare cell phone batteries, and an infrared camera.  After the search and questioning, Mr. Wienke was released from the additional screening process and allowed to proceed to his workstation.  The security officer conducting the search maintained possession of the pocket knife, the handcuffs and the pepper spray.  The walkie-talkies and the camera were returned to Mr. Wienke immediately.

After being released from the additional screening, Mr. Wienke proceeded to his workstation.  Mr. Wienke works in a classified section of the DHS facility and so, as is typical for him and other employees, he must check several of his personal items into a locker before entering the building where his workstation is located.  Prior to entering his building, Mr. Wienke stored his personal computer, as well as the walkie-talkies and the camera in the locker; these items were not brought to his workstation.

Approximately one hour after his release from the additional screening, security officers arrived at Mr. Wienke's desk.  They asked him for permission to search his work space; he consented.  They asked him for permission to search his person; he consented.  Upon searching his person, the security officers found a very small 5-shot .22 caliber pistol that Mr. Wienke had mistakenly forgotten was in his pocket.  Mr. Wienke was handcuffed and eventually transferred to custody of the Metropolitan Washington Police Department.

Following these events in Washington, D.C., DHS security officers sought a search warrant to search Mr. Wienke's residence in Martinsburg.  The affidavit attached to the search warrant application cites two bases for the request:  1) a belief on the part of the security officers that Mr. Wienke was going to violently assault, kidnap, or assassinate high-level DHS employees; and 2) a belief on the part of the security officers that Mr. Wienke was impersonating

a police officer.  Based on the affidavit, Magistrate Judge Robert W. Trumble authorized the

search warrant.  The warrant was executed on the evening of June 9, 2016.  Three subsequent

search warrants were then sought based on information gleaned from the execution of the first

search warrant.  Application was made for these three warrants and Magistrate Judge Trumble

again authorized each warrant.  The warrants were executed on June 13, 2016.  Based on the

information obtained from these four search warrants, the Government sought for, and obtained,

from the grand jury a seven-count indictment charging Mr. Wienke with unlawfully making,

receiving, or possessing certain firearms.

Mr. Wienke contends that the first search warrant was defective because 1) it did not set

forth a nexus between his alleged criminal behavior and his residence; and 2) it was not

supported by probable cause.  Mr. Wienke further contends that the subsequent warrants are all

defective as well because they are based on evidence and information gleaned from the first

defective search warrant and are thus "fruits of the poisonous tree."  Therefore, because all

search warrants in this case are defective, Mr. Wienke contends that all physical evidence in this

case should be suppressed.

## MEMORANDUM OF LAW

The Fourth Amendment requires that warrants must (1) be issued by a neutral and

detached magistrate, (2) contain a "particular description of the place to be searched and the

persons or things to be seized," and (3) be based "upon probable cause, supported by oath or

affirmation."  U.S. CONST. AMEND. IV.  There is probable cause to search a home if there is a

fair probability that evidence of a crime is located within the residence. See United States v.

Murphy, 241 F.3d 447, 457 (6th Cir. 2001).   Whether probable cause exists must be determined

under a totality of the circumstances.  See Illinois v. Gates, 462 U.S. 213 (1983).

The test when reviewing an issued search warrant is whether there is substantial evidence

in the record supporting the magistrate's decision to issue the warrant.  Massachusetts v. Upton,

466 U.S. 727, 728 (1984).  The reviewing court does not conduct de novo review but rather

limits itself to the information presented to the magistrate who issued the warrant.  Id.

Therefore, the Court should limit itself to the Affidavit and Complaint for Search Warrant which

contains the sworn facts presented to the magistrate.  Id.

### A. The affidavit failed to establish any nexus between the alleged conduct in the community and Wienke's home.

In order to pass constitutional muster, there must be a sufficient nexus between the

criminal conduct, the items to be seized, and the place to be searched.  See United States v.

Anderson, 851 F.2d 727 (4th Cir. 1988).  The nexus may be inferred, based upon the unique

circumstances of a case and need not rest on direct observations; such an inference, however,

must be reasonable and "there still must be a 'substantial basis' to conclude that the

instrumentalities of crime will be discovered on the searched premises."  United States v.

Lockett, 674 F.2d 843, 846 (11th Cir. 1982); see United States v. Williams, 974 F.2d 480, 481-

82 (4th Cir. 1992)(totality of facts must establish a fair probability that drug paraphernalia will

be found in drug dealer's motel room).

For example, in United States v. Lalor, 996 F.2d 1578, 1583 (4th Cir. 1993), the

defendant was arrested following the execution of a search warrant at his residence in Baltimore,

Maryland.  He was charged with possession with intent to distribute cocaine and use of a firearm

in relation to a drug trafficking offense.  The affidavit in support of the search warrant was based

upon information from two informants who claimed the defendant sold drugs in the community

and lived in the area of Waverly Way in Baltimore.  The affidavit contained information from other sources indicating that the defendant resided with his girlfriend at 1572 Waverly Way and had prior arrests for drugs.  The defendant moved to suppress the evidence and claimed that the search warrant was defective and lacking in probable cause.  The district court denied the motion to suppress, finding that the warrant was based upon probable cause, or in the alternative, that an officer could rely in good faith on the warrant.  On appeal, the Fourth Circuit held that the warrant application was deficient, as it failed to establish a nexus between the place to be searched and the alleged drug activity.  Id.  The search warrant affidavit failed to describe circumstances indicating a likelihood of drug activity at the defendant's residence and did not explain a geographic relationship between alleged drug sales in the community and the residence to be searched.  Id.  However, the Court invoked the Leon good faith exception, which salvaged the warrant, because the warrant was not "so lacking in probable cause" as to render the officers' reliance upon it objectively unreasonable.  Id. at 1583.

Other circuits refuse to uphold residential searches unless some information links the criminal activity to the defendant's residence.  See United States v. Ramos, 923 F.2d 1346, 1352 (9th Cir. 1991)(finding no probable cause where surveillance did not lead to facts making it likely that items officers sought were located in apartment); United States v. Green, 634 F.2d 222, 224-25 (5th Cir. 1981)(extensive information concerning wide variety of criminal activities in California, without more, did not provide probable cause for search of Florida home, and the seizure of firearms and 200 pounds of other items wholly unrelated to the alleged criminal activity in California); United States v. Gramlich, 551 F.2d 1359, 1361-62 (5th Cir. 1977), cert. denied, 434 U.S. 866 (1977)(seizure of appellant's boat loaded with contraband off the coast of Colombia and information that appellant had been seen operating two cars, a van, and a

motorboat out of his residence in Alabama over a three-week period did not supply probable

cause to support warrant to search the Alabama residence); United States v. Flanagan, 423 F.2d

745, 746-47 (5th Cir. 1970)(information that appellant had burglarized home in Houston, that

appellant had been arrested in Dallas with some of the stolen items in his possession, and a

conclusory assertion that of affiant's personal belief that the remainder of the stolen items were

to be found in appellant's residence in Fort Worth did not furnish probable cause for the search

of the residence).

Here, the affidavit in support of the initial search warrant of June 9, 2016, does not

establish any probability that any evidence associated with workplace violence or impersonating

a police officer would be found in Mr. Wienke's residence.  The affidavit does not support with

objective facts any connection between what allegedly occurred at the DHS facility in

Washington and Mr. Wienke's residence in Martinsburg.  In fact, all that Special Agent Eric

Mann relies offers in the affidavit is his training and experience.  He offers no other facts or

evidence to the Magistrate Judge connecting Mr. Wienke's alleged actions in D.C. to his

residence—in other words, no "substantial basis" to conclude that instrumentalities of a crime

will be found in Mr. Wienke's residence.  No photographs are presented showing Mr. Wienke

coming and going from the residence in police gear.  No statements from witnesses alleging Mr.

Wienke made statements about having police gear in his house or plans to assassinate DHS

employees in his house are presented.  No objective facts about the residence at all are in the

affidavit.  SA Mann simply makes allegations in the affidavit that Mr. Wienke was

impersonating a police officer and was intent on committing workplace violence, and then,

offering his training and experience as the only support, asserts that evidence of workplace

violence and impersonating a police officer will be found in Mr. Wienke's house.  In fact,

paragraphs 14, 15, and 16, all start with the phrase "based on my [your affiant's] training and experience…." In <u>United States v. Frazier</u>, 423 F.3d 526, 533 (6th Cir. 2005), the Sixth Circuit held that a mere "allegation that the defendant was a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence." Likewise here, the mere allegation that Mr. Wienke was impersonating a police officer or engaging in workplace violence is not enough to tie that activity with his residence. For this reason alone, the initial search warrant of June 9, 2016, and the three subsequent search warrants based on the initial warrant, is defective and all physical evidence obtained as a result of these warrants should be suppressed.

### B.  The affidavit failed to establish probable cause.

The issuance of warrants is governed by Rule 41 of the Federal Rules of Criminal Procedure. A warrant may only issue upon a showing of probable cause. FRCrP 41(d)(1). The Supreme Court has described probable cause as a "fair probability that contraband or evidence of a crime will be found in a particular place." <u>Gates</u>, 462 U.S. at 238. Probable cause can be based on the discovery of certain evidence or the location where it was discovered. <u>See</u> <u>United States v. Montieth</u>, 662 F.3d 660, 664-65 (4th Cir. 2011) (evidence of drug dealing found in defendant's trash sufficient to establish probable cause). Probable cause can be based on information obtained from reliable sources. <u>See</u> <u>Draper v. United States</u>, 358 U.S. 307 (1959). Probable cause can be based on an anonymous tip which has been corroborated. <u>Gates</u>, 462 U.S. at 241.

No such circumstances are present in this case. The affidavit for the June 9th search warrant is not based on any particular evidence; it is not based on any informant testimony; it is not based on any hearsay evidence; it is not based on any anonymous tip. No evidence is offered in the affidavit that Mr. Wienke had on his person a law enforcement badge, a law enforcement

weapon, law enforcement gear, or in any way held himself out to be a law enforcement officer, or ever tried to deny an individual their liberty or property under color of law enforcement authority.  In terms of workplace violence, SA Mann only offers that he knew that Mr. Wienke knew that a meeting of senior DHS officials was occurring directly across the hall from his cubicle.  SA Mann provides no further detail as to how he knew what Mr. Wienke—whether it was from an informant, or from some documentation, or from some piece of evidence, or perhaps SA Mann is some clairvoyant able to read minds.  SA Mann, in the search warrant affidavit, made certain allegations, supported those allegations with misleading statements and innuendo, and then relied solely on this alleged "training and experience" to suggest that probable cause existed to search Mr. Wienke's residence.  SA Mann's alleged "training and experience" do not rise to the level of the "fair probability" standard of Gates.  The June 9th affidavit consists of a recitation of the events in D.C., the allegations by SA Mann (and no one else) that Mr. Wienke was impersonating a police officer and intent on assassinating high level DHS employees, and an assertion that SA Mann's training and experience (and nothing more) tell him that Mr. Wienke's residence must be search.  The affidavit is completely lacking any semblance of probable cause.  For this reason alone, the June 9th warrant is defective and any physical evidence obtained by way of that warrant and the three subsequent warrants should be suppressed.

### C.  The Leon Good Faith Exception does not apply.

The so-called "good faith exception" will salvage a deficient warrant, unless the warrant was so bad that "a reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's authorization."  United States v. Leon, 468 U.S. 897, 922 n. 23 (1984).  There are situations in which the Fourth Circuit has found that an officer's reliance on a

search warrant was not reasonable, and the good faith exception will not apply.  See United

States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995).

Specifically, there are four situations in which this Court will that an officer's reliance on

a search warrant was not reasonable, and the good faith exception would not apply: (1) when the

warrant is based on an affidavit that contains "knowing or reckless falsity"; (2) when the

magistrate has simply acted as a "rubber stamp" for the police; (3) when the affidavit does not

"provide the magistrate with a substantial basis for determining the existence of probable cause;"

and (4) when the warrant is so "facially deficient" that an officer could not reasonably rely upon

it.  See United States v. Wilhelm, 80 F.3d 116, 121 (4th Cir. 1996) (citing Leon, 468 U.S. at 923).


**1.      The affidavit included false and misleading information which was material
and necessary to any finding of probable cause**.

Mr. Wienke contends that there are multiple statements in the affidavit which were both

material and misleading.  First, the affidavit cites "assault, kidnapping, or murder of senior

officials in the executive branch" as a basis for the warrant.  No scintilla of evidence exists that

Mr. Wienke ever assaulted, kidnapped, or murdered a member of the Executive Branch or ever

had the intent to assault, kidnap or murder such a person.  Baselessly citing statutes such as 18

U.S.C. 351 and 1114 serves no purpose other than to trick the Magistrate Judge into believing

that a warrant must issue lest a national tragedy ensue.

Second, the initial affidavit states that "your affiant was also aware that Jonathan L.

Wienke had knowledge of this meeting."  "This meeting" refers to a meeting of senior DHS

officials that was occurring in a meeting room across the hall from Mr. Wienke's cubicle.  SA

Mann is "your affiant."  He was not aware that Mr. Wienke had knowledge of this meeting

because Mr. Wienke did not have knowledge of this meeting.  Mr. Wienke's duties do not give

him access to the daily schedules of senior DHS employees.  Unless he actually sees these senior

DHS employees walk into the meeting room, Mr. Wienke has no advanced knowledge of what

day a meeting is scheduled, when during the day the meeting is scheduled, and who is expected

at the meeting.

Third, SA Mann says in the initial affidavit that a second hand-cuff key was "discovered"

"secreted" in Mr. Wienke's back pocket.  That statement is simply false.  The handcuff key in

Mr. Wienke's back pocket was not "discovered" by SA Mann during a search.  Mr. Wienke told

them it was there after he was handcuffed.  The key was hardly "secreted" away in his back

pocket if he freely admitted to the officers that it was there.  Again, this is another attempt by SA

Mann to boost his insufficient affidavit with false statements in order to entice the Magistrate

Judge into issuing a warrant.

Fourth, in paragraph 14 of the June 9th affidavit, SA Mann implies that Mr. Wienke had,

at his workstation, the infrared camera, handcuffs, pocket knife, pepper spray and walkie-talkies,

all to be used, according to SA Mann, to assault, kidnap or murder senior DHS officials.  SA

Mann knows full well, however, that none of these items were accessible to Mr. Wienke.  The

handcuffs, pepper spray , and pocket knife were all confiscated during Mr. Wienke's additional

screening.  The infrared camera and the walkie-talkies, as SA Mann, knows, were in a storage

locker outside of the building where Mr. Wienke was working.

Fifth, the initial affidavit indicates that the extraordinarily small firearm was found in Mr.

Wienke's right front pants pocket.  It was not.  It was found in his left front pants pocket.

Lastly, the keychain breathalyzer and the pepper spray were not law enforcement

equipment as the initial affidavit implies.  The keychain breathalyzer can be purchased at any gas

station or auto parts store and is for personal use—not to charge somebody with a DUI.  The

pepper spray had a label on it with words to the effect of "law enforcement formula."  Being a

higher grade does not transform the pepper spray in to a law-enforcement-only product.  If

someone legally buys a gun that is of the same caliber and style as what law enforcement

officers, that does not imply that the gun purchaser is trying to hold himself out as a cop.  SA

Mann's attempt to characterize the breathalyzer and pepper spray as law enforcement gear is

misleading.


        **2.**      **The affidavit in support of the search warrant was so lacking in indicia of**

**probable cause to render official belief in its existence entirely unreasonable.**

As noted above, Mr. Wienke contends that the affidavit supporting the June 9th search

lacked any indicia of probable cause.  It is so lacking in probable cause as to render official

belief in its existence entirely unreasonable.  The affidavit contained no facts to support a

reasonable inference that relevant evidence could be found inside Mr. Wienke's home on June 9,

2016.  The affidavit required speculation and conjecture in order for one to conclude that Mr.

Wienke's home was somehow involved.


        **3.**      **The magistrate judge issuing the warrant abandoned his judicial role by**

**"rubber stamping" a bare bones affidavit and, therefore, the Leon good faith exception**

**should not apply.**

It seems the federal magistrate judge did not critically analyze the affidavit in

support of the search warrant for Mr. Wienke's residence.  The affidavit stated almost nothing

about Mr. Wienke's home, other than the fact that he lived there, and that SA Mann's alleged

training and experience indicated their might be something there.  Without any objective facts in the affidavit indicating that there was a "fair probability," that evidence a crime would be found in Mr. Wienke's house, the magistrate judge would have only had SA Mann's assertion that his training and experience told him that evidence of a crime would be in Mr. Wienke's residence. This amounts to a rubber stamp scenario—relying solely on an unsupported assertion from a cop about his own skill set to justify an intrusion into someone's home.  Therefore, the good faith exception set forth in Leon should not be applied to salvage the June 9th search warrant.

### D. Each of the three subsequent search warrants issued on June 13, 2016 are likewise defective and fruit of the poisonous tree.

As noted above, following execution of the original June 9th search warrant at Mr. Wienke's residence in Martinburg, law enforcement sought and obtained three additional search warrants from Magistrate Judge Trumble.  The second search warrant, 3:16mj43, was for a search of a storage building in Martinsburg.  The third search warrant, 3:16mj44, was for another search of Mr. Wienke's residence and for a storage shed located behind the residence.  The fourth search warrant, 3:16mj45, was for a search of a blue Chevrolet Silverado.  The affidavits accompanying the applications for these warrants were prepared by SA Patrick Kelley.  Each affidavit begins with the first 14 paragraph prepared by SA Mann in the original June 9th affidavit.  The affidavits each then continue with information gleaned by SA Kelley during the search of Mr. Wienke's residence on June 9th pursuant to the original warrant.

Since the three subsequent affidavits each contain verbatim information from the original affidavit, Mr. Wienke contends that they each suffer from the same defects as the original affidavit as described above.  Further, Mr. Wienke contends that because the original affidavit and warrant were defective, any evidence gained from the search conducted pursuant to that

warrant and used to support a probable cause finding in the subsequent warrants is defective and

constitutes fruit of the poisonous tree.  All four search warrants are defective and should be

suppressed for all the reasons cited in this motion.

## CONCLUSION

Based on the foregoing, this Court should suppress all physical evidence obtained

through searches conducted pursuant to the warrants issued on June 9, 2016 (3:16mj42) and June

13, 2016 (3:16mj43, 44, and 45).


Respectfully submitted,

**JONATHAN LEIGH WIENKE**,


By:       s/ Nicholas J. Compton
            Nicholas J. Compton
            Attorney for Defendant
            WV State Bar ID 11056
            Federal Public Defender Office
            MVB Bank Building
            651 Foxcroft Avenue, Suite 202
            Martinsburg, West Virginia 25401
            Tel. (304) 260-9421
            Fax. (304) 260-3716
            E-Mail. Nicholas_Compton@fd.org

## CERTIFICATION OF SERVICE

I hereby certify that on September 16, 2016, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

following:

Anna Krasinski, AUSA
Office of the United States Attorney
U.S. Courthouse
217 W. King Street, Suite 400
Martinsburg, WV 25401


s/ Nicholas J. Compton
Nicholas J. Compton
Attorney for Defendant
WV State Bar ID 11056
Federal Public Defender Office
MVB Bank Building
651 Foxcroft Avenue, Suite 202
Martinsburg, West Virginia 25401
Tel. (304) 260-9421
Fax. (304) 260-3716
E-Mail. Nicholas_Compton@fd.org