AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
для the
Northern District of West Virginia

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

207 East Martin Street
Martinsburg, WV 25401

Case No. 3:16-MJ-42

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

207 East Martin Street, Martinsburg, WV 25401

located in the ____Northern____ District of ____West Virginia____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 351, 1114, 371, 912, 930. | Attempt and conspiracy to assassinate, kidnap, or assault a specified member of the executive branch of the Government; false personation and/or impersonating a federal officer; possession of firearm in Federal facility. |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

ERIC N. MIHAN / SPECIAL AGENT
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 06/09/2016

*Judge's signature*

City and state: Martinsburg, West Virginia

Robert W. Trumble, United States Magistrate Judge
*Printed name and title*

DEFENDANT'S EXHIBIT 1A

US00000680

IN THE UNITED STATES DISTRICT COURT
for the Northern District of West Virginia

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 207 East Martin Street, Martinsburg, West Virginia 25401 | Case No. 3:16-MJ-42 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Eric N. Mann of the U.S. Department of Homeland Security (DHS) Office of the Chief Security Officer Internal Security and Investigations Division (DHS-ISID), being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for evidence of crime, contraband, fruits of crime or other items illegally possessed and property designed for use, intended for use, or used in committing a crime located within the residence and grounds of 207 East Martin Street, Martinsburg, West Virginia The location and items to be searched for are described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant in accordance with Federal Rules of Criminal Procedure 41.

2. Your affiant is a Special Agent with the DHS-ISID and a federal law enforcement officer. I have been employed with the DHS-ISID for over nine years. Prior to that, I was a Special Agent with Naval Criminal Investigative Service for ten years. I attended the Criminal Investigator Training Program ("CITP") at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. While serving as a Special Agent at the DHS-ISID, I conduct a variety of sensitive and complex investigations of violations of Title 18 of the United States

Code, including fraud, bribery, larceny, child pornography, threats, unauthorized disclosures of classified information and unauthorized access to government systems. I have completed Active Shooter Response Training for federal law enforcement officers. I have participated in multiple search warrants and I have been the affiant on search warrants.

3. As a federal agent, I am authorized to conduct investigations of suspected criminal violations of various federal laws and I have the authority to execute warrants issued under the authority of the United States.

4. I am one of the agents investigating the events surrounding the June 9, 2016, arrest of JONATHAN L. WIENKE, a DHS employee assigned to work at DHS Headquarters' Nebraska Avenue Complex (NAC) located at 3801 Nebraska Avenue, N.W., Washington D.C. and the alleged violations of Title 18, United States Code, Section 930 and further detailed in Attachment A committed by JONATHAN L. WIENKE and other individuals, known and unknown.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations Title 18, United States Code, Sections 930 (possession of firearms and dangerous weapons in Federal facilities), 912 (officer or employee of the United States) and 371 (conspiracy to commit offense against the United States) to commit 351, 1114, (the assault, kidnapping, or murder of senior officials in the executive branch while engaged in the performance of official duties) have been committed by JONATHAN L.

WIENKE and others unknown to your affiant. There is also probable cause to search for the items described in Attachment A.

**PROBABLE CAUSE**

7.     JONATHAN L. WIENKE is an employee of the Department of Homeland Security. He works as a Management and Program Analyst in the Office of Intelligence and Analysis. He holds a Top Secret Clearance with access to Sensitive Compartmented Information. He lives at 207 West Martin Street, Martinsburg, West Virginia. He was born September 12, 1970. He has no criminal history.

8.     The NAC is assessed as Facility Security Level (FSL) Five. FSL 5 is the highest security level possible according to the Interagency Security Committee Standards, on a par with the Pentagon, the White House, the U.S. Capitol and a number of other iconic national landmarks. The NAC meets or exceeds every tangible ISC criteria, and houses the Secretary and Deputy Secretary, as well as 3,000 federal employees. Inasmuch as the Department was established as a direct result of the terrorist attacks of 9/11, the NAC is a symbol of national resolve of a particularly profound importance in the context of security.

9.     At approximately 7:30 a.m. on June 9, 2016, JONATHAN L. WIENKE approached a NAC pedestrian entrance gate. In accordance with enhanced security measures in place, which included random screening, JONATHAN L. WIENKE was selected for a search of his person and belongings. His backpack was placed in a screening machine. Items found inside the backpack included: (1) a folding knife with a blade approximately 3 inches in length; (2) two handheld radio communication devices; (3) O/C incapacitating spray labeled law enforcement; (4) an infrared camera to view heat signatures; (5) a pair of black law enforcement handcuffs: (6)

a portable breathalyzer device in a container labeled "BAC"; and (7) a cellphone adapter with earbuds. A handcuff key was located on JONATHAN L. WIENKE's key-ring.

10. Security officers seized the knife and O/C spray. JONATHAN L. WIENKE was allowed into the NAC. At approximately 9 a.m. your affiant and Tammy Smith, a fellow law enforcement officer proceeded to JONATHAN L. WIENKE's workspace, a workstation with four cubicles, in NAC Building 19. NAC Building 19 contains classified information and is itself classified as a Sensitive Compartmented Information Facility. Your affiant was aware that at that this time a meeting of senior DHS officials was occurring directly across from JONATHAN L. WIENKE's workspace. Your affiant was also aware that JONATHAN L. WIENKE had knowledge of this meeting.

11. JONATHAN L. WIENKE was not in his cubicle but arrived soon after. JONATHAN L. WIENKE was wearing a DHS polo shirt, khaki cargo pants and brown outdoor boots. Your affiant identified himself and asked JONATHAN L. WIENKE if he knew why your affiant was there. Your affiant then requested permission to search JONATHAN L. WIENKE's workspace. JONATHAN L. WIENKE said "yes." Your affiant then asked JONATHAN L. WIENKE if he had any weapons on his person. JONATHAN L. WIENKE said "no." Your affiant then asked JONATHAN L. WIENKE for permission to search him. JONATHAN L. WIENKE said "ok."

12. Your affiant patted down JONATHAN L. WIENKE and discovered a .22 caliber five shot revolver loaded with 5 .22 caliber hollow-point rounds in JONATHAN L. WIENKE's right-front pants pocket. When your affiant discovered the weapon, he heard JONATHAN L.

WIENKE utter an audible expletive. A subsequent search of JONATHAN L. WIENKE discovered a second hand-cuff key secreted in his back pocket.

13. A records check revealed that JONATHAN L. WIENKE has a permit to carry a concealed weapon in West Virginia.

14. Based on your affiant's training and experience as a Special Agent of the DHS-ISID, individuals who conceal dangerous weapons and bring them on to federal property pose a grave danger to the senior officials and other federal employees, contractors and visitors on the facility. This grave danger is compounded when an insider such as JONATHAN L. WIENKE has access to highly secure facilities and buildings with close proximity to meetings of senior DHS officials. Your affiant also notes that JONATHAN L. WIENKE possessed two radio communication devices. In combination with the infra-red camera, handcuffs, multiple handcuff keys, knife, OC Spray and gun, this provides probable cause to believe that JONATHAN L. WIENKE was conspiring with another to commit workplace violence, and more particularly may have been conspiring or planning to commit violence against the senior DHS officials in the building. Your affiant also believes that these factors, in conjunction with the portable breathalyzer device, and the law enforcement label on the OC spray, provide probable cause to believe that JONATHAN L. WIENKE, alone or in concert with others, was impersonating, or attempting to impersonate, a federal law enforcement officer.

15. Based on my training and experience, people who conspire to commit workplace violence targeting high level United State officials maintain evidence regarding planning, preparation, and information on the identity of conspirators in their homes. Your affiant's training and experience provides probable cause to believe that evidence of these above crimes,

and others as set forth in Attachment A, to include planning and preparation for the events described above, as well as the preparation and planning for future incidents, may be present in the residence of JONATHAN L. WIENKE.

16. Based on my training and experience, in investigations involving prospective violence against high level United States officials, it is important to identify possible conspirators as soon as possible, as well as to determine whether there is any ongoing imminent threat to the high level United States officials.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

17. This information is contained in Attachment A.

### CONCLUSION

18. Based on the forgoing, I request that the Court issue the proposed search warrant.

Respectfully submitted,

Eric Mann, Special Agent
U.S. Department of Homeland Security
Chief Security Officer Internal Security and
Investigations Division

Subscribed and sworn to before me on June 9, 2016

UNITED STATES MAGISTRATE JUDGE

## Attachment A

### Description of Residence

1. When viewed from the street, this residence is described as a multi-story red-brick duplex with a green columned roof covering a porch. The numbers 207 appear on a yellowish plate to the left of a dark-colored storm door. Two air conditioning units are in windows facing the street. A locked, weathered storm cellar door is on the left side of the residence. A yellow two-story addition is attached to the back of the residence.

### Items to be Seized

1. Any and all weapons, including handguns, knives, rifles, shotguns, submachine guns, or associated ammunition, or any other firearms, receipts for the purchase of firearms, ammunition, or other weaponry, photographs of conspirators or associates with firearms or other weaponry, and manuals and documentation related to any firearms or weaponry;
2. Any and all infrared and thermal imaging equipment, receipts for the purchase of infrared and thermal imaging equipment, and manuals and documentation related to infrared and thermal imaging equipment;
3. Any and all restraining devices, including handcuffs, receipts for the purchase of restraining devices, and manuals or documentation related to restraining devices;
4. Any and all self-defense devices, including pepper spray, also known as OC spray, receipts for the purchase of self-defense devices, and manuals or documentation related to self-defense devices;
5. Any and all two-way radios, receipts for the purchase of two-way radios, and manuals or documentation related to two-way radios;
6. Any and all financial documentation relating to the purchase of weapons, infrared and thermal imaging equipment, restraining devices, communication devices, and self-defense devices, described in this attachment and in the affidavit in support of this warrant, including all check registers and bank account statements;
7. Any and all information relating to the Department of Homeland Security and any of its employees, including documents or notes indicating building locations, building schematics, employee schedules, or documents or notes making reference to the Secretary of the Department of Homeland Security;
8. Any and all lists or notes of potential targets;
9. Any and all evidence related to false impersonation or wrongful use of government credentials or badges;
10. Computers, including any and all Department of Homeland Security laptops, computer records, electronic storage media to include: secure digital cards (SD), compact flash cards, hard drives, USB drives. Books, records, receipts, and other papers relating to the preparation for workplace violence, introducing weapons into federal facilities and false

      personation and/or impersonating a federal officer;
11. Address or telephone books and papers reflecting names, addresses, telephone or pager numbers and its contents of co-conspirators;
12. Photographs, negative, video tapes, films or slides of co-conspirators, or Department of Homeland Security buildings or employees;
13. Indicia of occupancy, residency, or ownership of the premises to be searched, including but not limited to utility and telephone bills, rental or purchase agreements and keys;
14. Indicia of rental or ownership of vehicles used to facilitate any of the activities described in the affidavit in support of this warrant;
15. Papers, tickets, notes, schedules, receipts, and other items relating to domestic and international travel; and
16. Mobile phones, cellular phones, mobile paging devices, trac phones, and any other prepaid wireless devices.

All of the above being evidence, fruits, and instrumentalities of 18 U.S.C. Sections 351, 371, 912, 930, and 1114.